# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**GULF RESTORATION NETWORK**                                   **PLAINTIFF**

**V.**                                              **CIVIL NO.: 1:17cv130-LG-RHW**

**OSCAR RENDA CONTRACTING, INC.**                              **DEFENDANT**

---

## FIRST AMENDED
## COMPLAINT FOR DECLARATORY RELIEF,
## INJUNCTIVE RELIEF,
## AND PENALTIES

---

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 2

PARTIES .................................................................................................................... 4

JURISDICTION AND VENUE ..................................................................................... 5

LEGAL BACKGROUND ............................................................................................. 6

OSCAR RENDA'S VIOLATIONS OF THE CLEAN WATER ACT ........................................ 9

    A. Location of Oscar Renda's Violations ................................................................. 9

    B. Oscar Renda Has Failed to Maintain Pollution Control Measures at Storm Drains .......... 10

    C. Oscar Renda has Failed to Install Sediment Fencing and Perimeter Controls, Allowing Pollution to Flow Directly into Biloxi Bay and its Tributaries............................................... 13

    D. Oscar Renda has Placed Unpermitted Fill Material Directly in Waters of the United States .................................................................................................................................. 14

    E. Oscar Renda has Failed to Report Its Violations, and Implement Practices to Prevent Future Violations ......................................................................................................... 15

    F. Oscar Renda's Multiple Violations Require a Meaningful Penalty .................................. 15

FIRST CLAIM FOR RELIEF
(Failure to phase construction)........................................................................................ 18

SECOND CLAIM FOR RELIEF
(Failure to develop best management practices based on site-specific conditions)..................... 18

THIRD CLAIM FOR RELIEF
(Inadequate structural controls) ...................................................................................... 19

FOURTH CLAIM FOR RELIEF
(Accumulation and migration of sediment-pollution) ............................................................ 19

FIFTH CLAIM FOR RELIEF
(Inadequate maintenance).............................................................................................. 19

SIXTH CLAIM FOR RELIEF
(Ineffective plans and incomplete implementation) .............................................................. 19

SEVENTH CLAIM FOR RELIEF
(Violation of narrative water quality standards) ........................................................... 20

EIGHTH CLAIM FOR RELIEF
(Lack of compliance and mitigation) ............................................................................ 20

NINETH CLAIM FOR RELIEF
(Failure to notify of noncompliance) ............................................................................ 20

TENTH CLAIM FOR RELIEF
(Filling waters of the United States without a permit) ................................................. 20

PRAYER FOR RELIEF ................................................................................................ 21

CERTIFICATE OF SERVICE ......................................................................................22

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

GULF RESTORATION NETWORK )
)
             Plaintiff, )
)
        v. )      CIVIL NO.: 1:17cv130-LG-RHW
)
OSCAR RENDA CONTRACTING, INC. )
)
            Defendant. )
)
)
_____)
_____

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND
PENALTIES**
_____

      1.      Plaintiff Gulf Restoration Network ("GRN") filed its Complaint for Declaratory

Relief, Injunctive Relief, and Penalties on 27 April 2017. ECF Doc. 1.  This amendment is filed

to correct several technical errors in the original complaint.  Defendant Oscar Renda Contracting,

Inc. ("Oscar Renda") filed its answer on June 2, 2017.  ECF Doc. 6.  Pursuant to Fed. R. Civ. P.

15(a)(1)(B), this first amended complaint may be filed as a matter of course since it is filed less

than 21 days after service of Oscar Renda's responsive pleading.

      2.      With the exception of the technical corrections stated below, all allegations of

Gulf Restoration Network's Complaint remain the same.

      3.      Paragraphs 37 and 39 of the original complaint (now Paragraphs 43 and 45) and

Exhibit 2 contained an incorrect identifier for the weather station used as the basis for the Ocean

Springs rain data referenced in the complaint. The correct weather station identifier is

GHCND:USC00226484, <u>not</u> GHCND:US1MSJC0015.

4. Paragraph 39 of the original complaint (now Paragraph 45) contains a chart with additional rain dates. The measurement in the right-hand (Ocean Springs) column for March 8, 2017 should read 1.1, not 1.18.

5. The rain-data entry in Exhibit 2 for March 25, 2016 is incorrect and should not have been included in the chart, changing the total number of rain events in Exhibit 2, as referenced in Paragraph 37 of the original complaint (now Paragraph 43), to 106.

6. Gulf Restoration Network believes that the amendment is technical in nature and does not require any further responsive pleading from defendant Oscar Renda.

## INTRODUCTION

7. Two-and-a-half years ago Oscar Renda Contracting, Inc. tore up about 50 miles of hard surfaced urban streets in East Biloxi. Many of these streets remain bare, exposed dirt today. The company did this work under a contract for an infrastructure project commonly called the East Biloxi Street Repair Program. This contract and federal law expressly require Oscar Renda to control flows of polluted runoff from disturbed areas.

8. Instead of maintaining the controls for polluted runoff, Oscar Renda allowed massive flows of polluted water into Biloxi Bay and the bayous flowing into the bay. Such a sizeable surface area of exposed dirt—in combination with a lack of effective storm water controls—has resulted in a huge sediment load entering Biloxi's waterways with each significant rainfall. Sediment flows are so heavy that they change the color of the receiving waters to a milky brown and have caused the buildup of pollutant-laden deposits in sensitive coastal habitats. In some cases Oscar Renda has also dumped material directly into bayous, which violates the Clean Water Act's ban on unpermitted fill activities in waters of the United States.

9. This kind of uncontrolled sediment pollution directly impacts valuable public

resources. Sediment laden storm water is well documented to affect water clarity, preventing normal plant growth, disrupt the food chain by destroying habitat, affect the health of fish and other wildlife, introduce excessive nutrients, and impact recreational use. Receiving waters like Auguste Bayou are among the most important estuarine habitats for fish and other aquatic life. Auguste Bayou itself was the subject of a collaborative restoration project in the years after Hurricane Katrina. Oscar Renda's actions and inactions are in clear violation of the federal Clean Water Act.

10. On February 23, 2017, the Gulf Restoration Network provided Oscar Renda with a 60 day notice letter detailing these violations. Since that time Oscar Renda has deployed some measures to control polluted runoff. However, a substantial portion of the project remains un-stabilized and lacks effective protections around storm drains and adjacent waterbodies. As a consequence, the Court's intervention is necessary to protect public resources from further degradation.

11. This lawsuit asks the Court to grant the following relief:

(a) Declare that Oscar Renda's repeated failures to control polluted runoff constitute a violation of the Clean Water Act and its implementing regulations;

(b) Award civil penalties in an appropriate amount based on the number of days in which Oscar Renda was in violation of the Clean Water Act for each drain, outfall, or receiving waterbody in each of the affected project areas;

(c) Enter an injunction requiring Oscar Renda to take all actions necessary, including remediation of adverse impacts to aquatic resources and implementation of best management practices to prevent future violations of the Clean Water Act;

(d) Award the Gulf Restoration Network its reasonable attorneys' fees and costs; and

(e) Award such other relief as is required to protect public resources.

## PARTIES

12.    Plaintiff Gulf Restoration Network is a coalition of environmental, social justice, citizens' groups, and individuals committed to protecting and restoring the valuable resources of the Gulf of Mexico to an ecologically and biologically sustainable condition. The organization was formed in 1994 to raise awareness of environmental issues in Gulf States and to increase communication and coordination of member activities across the region. Gulf Restoration Network has members in the five Gulf States of Texas, Louisiana, Mississippi, Alabama, and Florida, and nationwide. One of the organization's priority issues is addressing the needless destruction of wetlands and coastal habitat in the region. Gulf Restoration Network has issued a Statement of Principles on Wetlands Protection that detail the organization's interest in ensuring that wetlands are fully protected under the law. Members of Gulf Restoration Network live, work, or recreate near the East Biloxi Street Project construction areas and the affected waterbodies, including Auguste Bayou, Keegan Bayou, the un-named bayou immediately east of Auguste Bayou, and Biloxi Bay.

13.    Gulf Restoration Network is a "person" and a "citizen" as defined by section 502(5) of the Clean Water Act. 33 U.S.C. § 1362(5).

14.    Oscar Renda Contracting, Inc., is a Texas corporation authorized to transact business in the state of Mississippi.

15.    Oscar Renda is a "person" as defined in 33 U.S.C. § 1362(5) and 40 C.F.R. § 122.2, and is engaged in construction involving the disturbance of at least five acres of land within the meaning of 40 C.F.R. § 122.26(b)(14)(x). Oscar Renda has operational control of construction-project plans and specifications or day-to-day operational control of those activities

which are necessary to ensure compliance with permit conditions.

## JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction over this action pursuant to 33 U.S.C.

§ 1365(a) (Clean Water Act's citizens suit provision) and 28 U.S.C. § 1331 (federal question

jurisdiction). Jurisdiction exists "when the citizen-plaintiffs make a good-faith allegation of a

continuous or intermittent violation." *Gwaltney of Smithfield v. Chesapeake Bay Found*, 484

U.S. 49, 56-63 (1987).

17.     In accordance with the notice requirements of the Clean Water Act's citizen suit

provision, 33 U.S.C. § 1365(b); 40 C.F.R. § 135.2, Gulf Restoration Network provided 60 days'

written notice to Oscar Renda regarding the allegations on which this suit is based (attached as

Exhibit 1 and incorporated by reference).[1]

18.     Oscar Renda's actions in violation of the Clean Water Act in Biloxi have harmed

and will continue to harm Gulf Restoration Network's interest in protecting wetlands and

ensuring consistency in wetlands management in Biloxi Bay and the Gulf Coast region. The

health of the waterbodies impacted by Oscar Renda's actions affects the overall health of the

Gulf of Mexico. Additionally, Oscar Renda's storm water discharges impair and will continue to

impair Gulf Restoration Network members' recreational and aesthetic enjoyment of Biloxi Bay,

the bayous that run into the bay, and the surrounding area. These injuries are actual and concrete,

and the relief sought in this action would redress them.  The Gulf Restoration Network therefore

has standing to pursue the matters in this lawsuit.

19.     Venue is appropriate in this judicial district and in this court pursuant to 33 U.S.C.

---

[1] Gulf Restoration Network submitted hundreds of photographs and video clips to Oscar Renda
in conjunction with its Notice of Intent to Sue, however due to size limitations only the charts
describing these files and not the actual photographs and video themselves have been included
with the complaint.

§ 1365(c), in that the violations of the effluent standards and limitations giving rise to the claims in this suit occurred in the Southern District of Mississippi.

**LEGAL BACKGROUND**

20.     Congress passed the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the nation's waters." Clean Water Act § 101(a), 33 U.S.C. § 1251. In the Act, Congress identified the national goal of eliminating "the discharge of pollutants into navigable waters" by 1985. Clean Water Act § 101(a)(1), 33 U.S.C. § 1251(a)(1). In furtherance of this goal, the Clean Water Act provides a comprehensive approach for the regulation of pollution discharges into the waters of the United States. Section 301 of the Act prohibits the "discharge of any pollutant by any person" without proper authorization, such as in compliance with the terms of a permit issued under section 402 or section 404. 33 U.S.C. § 1311(a).

21.     The Clean Water Act requires parties who wish to discharge dredged or fill material to waters of the United States or wetlands to obtain a § 404 permit from the United States Army Corps of Engineers. 33 U.S.C. § 1344.

22.     The Clean Water Act requires parties who may discharge "storm water runoff associated with industrial activity" to obtain a § 402 permit. 33 U.S.C. § 1342(p). This term encompasses storm water discharges from construction activities, including clearing, grading, and excavation activities, that result in a disturbance of five or more acres of total land area. 40 C.F.R. § 122.26(b)(14)(x).

23.     Authorized states may issue their own storm water permits. Mississippi, through its Department of Environmental Quality, has promulgated Mississippi Permit No. MSR10, the Large Construction General Permit for Land Disturbing Activities of Five (5) or More Acres (the

6

"Large Construction Storm Water Permit").

24.     The Large Construction Storm Water Permit requires that large construction projects develop Storm Water Pollution Prevention Plans meeting, among others, the following requirements:

(a)  Designing, installing, implementing and maintaining effective pollution prevention measures. Condition T-1.

(b) Implementing specific best management practices for the project site. Condition T-2.

(c)  Implementing controls designed to retain sediment onsite and minimize discharge of pollutants. Condition T-2.

(d)  Protecting storm drain inlets by surrounding or covering them with a filter material. Condition T-7.

(e) Implementing perimeter controls such as silt fencing.  Condition T-8.

(f)  Phasing or scheduling construction activities to minimize the amount of exposed soil. Condition T-8.

(g)  Implementing controls to prevent erosion and adverse impacts to waters of the State. Condition T-14.

(h)  Providing for inspection of controls and outfall/discharge points at least weekly, and after rain events that produce a discharge.  Condition T-15.

(i)  Correcting any poorly functioning controls or other deficiencies within 24 hours of inspection unless prevented by unsafe weather conditions.  Condition T-15.

25.     After developing Storm Water Pollution Prevention Plans, permittees under the Large Construction Storm Water Permit shall:

(a)  Implement the site-specific SWPPP.  Condition S-1.

(b)  Install additional erosion and sediment controls when existing controls prove to be ineffective.  Condition S-2.

(c)  Maintain erosion and sedimentation controls at all times. Condition S-3.

(d)  Remove sediment deposits from structural controls when deposits reach one third to one half the height of the control. Condition S-3.

(e)  Inspect all receiving streams, outfalls, erosion and sediment controls and other Storm Water Pollution Prevention Plan requirements at least weekly using the form in the Large Construction Forms Package.  Condition S-5.

(f)   Insure that storm water discharges are free from floating materials other than in trace amounts, materials that will settle to form objectionable deposits in receiving waters, and suspended solids, turbidity and color at levels inconsistent with the receiving waters. Condition L-1.

(g)  Report anticipated and unanticipated noncompliance to the Mississippi Department of Environmental Quality.

26.      Congress gave citizens the ability to enforce the discharge limitations in the Clean Water Act through suits like the present one. 33 U.S.C. § 1365.The Act defines "citizen" as a "person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). The violation of a Storm Water Pollution Prevention Plan is a violation of the Large Construction Storm Water Permit, which amounts to a violation of an effluent standard or limitation actionable under the Clean Water Act.

## OSCAR RENDA'SVIOLATIONS OF THECLEAN WATER ACT

27.      Oscar Renda entered into a contract with the City of Biloxi, Mississippi to perform infrastructure repair work involving the removal, replacement, and/or rehabilitation of

utilities—including sewer, water main, and storm drainage systems—and the replacement of

roads, and other areas disturbed as a result. Oscar Renda obligated itself to comply with the

Clean Water Act in carrying out its contractual responsibilities, and assumed responsibility for

developing and implementing the plans required by the Mississippi Large Construction Storm

Water Permit.  Nonetheless, the Gulf Restoration Network has documented an ongoing pattern or

practice of severe violations of the Clean Water Act in Oscar Renda's management of polluted

storm water runoff associated with the East Biloxi Street Repair Project.

A.     Location of Oscar Renda's Violations

    28.     The following map depicts the project areas:



29.     As the preceding figure shows, the project area is on Point Cadet directly adjacent to Biloxi Bay.  As the figure below shows, the area drains to the bay directly as well as through Keegan Bayou, Auguste Bayou, and an un-named bayou immediately east of Auguste Bayou.



B.      Oscar Renda Has Failed to Maintain Pollution Control Measures at Storm Drains

30.     Oscar Renda failed to maintain, and in some cases still fails to maintain the pollution prevention measures at storm drains required by the Large Construction General Permit and the company's own Storm Water Pollution Prevention Plans.  These storm drains carry polluted runoff to bayous draining into Biloxi Bay, and Biloxi Bay itself.  The failure to maintain pollution prevention measures at these storm drains has allowed uncontrolled sediment pollution.  Sediment flows have been so large that accumulated sediment has buried many storm drains.

31.     The Storm Water Pollution Prevention Plans for the different phases of the East Biloxi Street Project, with some limited variations, are generic and contain essentially identical

provisions. To prevent pollution from entering storm drains, the plans all contain a provision similar to the following: "Sediment barriers (i.e. silt fencing) will be constructed around storm drain inlets located within the project boundaries." The plans also contain a generic illustration of some kinds of controls that are required to be constructed around storm drains. An excerpt depicting a straw wattle filter is shown below:



32. The Storm Water Pollution Prevention Plans contain separate provisions requiring that controls like those be maintained in good order, and accumulated sediment be removed. The plan for areas GRS 1 and GRS 2 is attached as Exhibit 2 as an example.

33. As stated in the notice letter, "[t]he exact number of storm drains that lack the required pollution protections in the project area is unknown, but numbers in the hundreds. As a representative sample of the scope of the problem, a review conducted February 15, 2017, in the GRN5 East Biloxi Street Project area, revealed that, out of approximately 45 storm drains

observed in areas of ongoing construction, only 6 (13%) had visible protection measures in place, with signs of ineffective plastic wattle or fabric becoming visible at another 2 buried drains only after digging beneath inches of dirt. . . . Only 2 of the 45 total drains had wattling in place that appeared to be keeping the drains both open and clear of sediment (and the wattling on one of those showed signs of deterioration)." Exhibit 1 at 2.

34.     Oscar Renda has placed controls at many storm drains in the period following receipt of the Gulf Restoration Network's notice letter.  However, the April 2017 photograph below demonstrates that in some areas the lack of effective control measures continues to the present.  The April 25 photo on the left shows a storm drain directly adjacent to a large disturbed area of the project at Benachi and Thelma Streets, with no controls.



35.     When Oscar Renda has put in place the pollution control measures for storm drains required by the law, it has frequently failed to maintain such measures in good working order, with many such measures rendered completely ineffective by neglect. The company has not corrected these poorly functioning sediment controls as required by condition T-15 and other provisions of the Large Construction Storm Water Permit and the Storm Water Pollution Prevention Plans.

36.     Oscar Renda's failure to install and maintain these controls has led to large deposits of sediment in waters of the United States, and has also introduced suspended solids, turbidity and color at levels inconsistent with the receiving waters in violation of condition L-1 of the Large Construction Storm Water Permit.

C.      <u>Oscar Renda has Failed to Install Sediment Fencing and Perimeter Controls, Allowing Pollution to Flow Directly into Biloxi Bay and its Tributaries</u>

37.     Both the Large Construction Storm Water Permit and the Storm Water Pollution Prevention Plans specifically require that structural controls like sediment fencing be installed to intercept polluted runoff.  Nonetheless, uncontrolled sediment pollution laden runoff has traveled directly into Keegan Bayou, Auguste Bayou, the un-named bayou and Biloxi Bay due to the lack of adequate sediment fencing or other perimeter controls.  This sediment has come from un-stabilized road and other surfaces as well as stockpiles of materials which have no controls. Oscar Renda has also pumped accumulated storm water into waters of the United without installing best management practices against erosion and sediment pollution. This has contributed to the large sediment deposits that have damaged aquatic habitat and public resources.  This sediment has also introduced suspended solids, turbidity and color at levels inconsistent with the receiving waters in violation of condition L-1 of the Large Construction Storm Water Permit.

38.     For example, the following photographs show that a discharge point to Auguste Bayou adjacent to the Lee Street Bridge has remained without perimeter controls from February 7, 2017 (image on left) to April 23, 2017 (image on right).  The February 7 image was taken during a rain event and shows the discharge of heavily sediment laden water into the already muddy bayou.



D.     Oscar Renda has Placed Unpermitted Fill Material Directly in Waters of the United States

39.     Oscar Renda has in some instances placed large piles of construction materials in and along the edge of Biloxi's waterways.  In some instances these piles have encroached directly into and filled waters of the United States.  After due inquiry the Gulf Restoration Network has found no permit issued under Section 404 of the Clean Water Act that would authorize this fill.  The photo below is in Auguste Bayou at Lee Street, and shows a pile of raw material directly encroaching into the waterway adjacent to a construction site. The barrier around the material was added after authorities were notified.



E.      Oscar Renda has Failed to Report Its Violations, and Implement Practices to Prevent Future Violations

40.     Finally, despite actual knowledge of the scope of the storm-water problem, Oscar Renda has not taken action to report non-compliance and implement better practices as required by law. It has failed to notify the Mississippi Department of Environmental Quality of either anticipated or unanticipated noncompliance that has occurred as a result of significant rain events. The company has not implemented more effective practices when the practices in its Storm Water Pollution Prevention Plans have proven ineffective.  The company has also violated the law by tearing up miles of roadways well before any work could be done to resurface or stabilize them, thus failing to limit disturbed areas to the shortest time period and smallest area possible.

F.      Oscar Renda's Multiple Violations Require a Meaningful Penalty

41.     Oscar Renda's failure to follow the terms of the Large Construction Storm Water Permit and Storm Water Pollution Prevention Plans has resulted in multiple violations of 33 U.S.C. § 1342(p).Upon information and belief, the violations began shortly after the August 4, 2014 construction start date and have continued since that time.

42.     The exact number of violations is not known, since information necessary to establish the exact number remains in the control of Oscar Renda.  However, at a minimum each

of the following constitutes a separate violation of the Clean Water Act:

(a) Each date of discharge to each storm drain or storm water outfall lacking the required and effective storm water controls.

(b) Each date of discharge when required site specific best management practices were not in place.

(c) Each date of discharge when the required phasing of work and minimization of disturbed area was not in place.

(d) Each date of discharge on which adequate measures to control off-site migration of sediment was not in place.

(e) Each date of discharge when structural control measures were inadequately maintained.

(f) Each date of discharge when sediment formed objectionable deposits in receiving waters, or when suspended solids, turbidity and color were discharged at levels inconsistent with the receiving waters.

(g) Each date of discharge when inadequate Stormwater Pollution Prevention Plans were in place.

(h) Each date of discharge when accumulated sediment was not properly removed from structural controls.

(i) Each instance of failure to report an anticipated or unanticipated instance of non-compliance to the MDEQ.

(j) Each day that unpermitted fill materials remain in waters of the United States and unremediated.

43.     Exhibit 2 to the Notice of Intent to Sue (attached to this complaint and

incorporated by reference) contains a list documenting 106[2] significant rain events that have occurred between the construction start date and the present. For purposes of this complaint, rain events of significance mean specific dates on which weather stations operated by the National Oceanic and Atmospheric Administration in both Biloxi (Identification Number GHCND:USC00220792) and Ocean Springs (Identification Number GHCND:USC00226484) measured rainfall of at least 0.1 inch. *See* https://www.ncdc.noaa.gov/cdo-web/search.

44.     The Notice of Intent to Sue also was accompanied by photographs and video documenting specific instances of non-compliance and their dates.

45.     An additional three significant rain events meeting the criteria described above have occurred since the submission of the initial Notice of Intent to Sue, as follows:

| Date of Violation | Rainfall Amount - Biloxi (Station GHCND:USC00220792) | Rainfall Amount - Ocean Springs (Station GHCND:USC00226484) |
|---|---|---|
| 2/18/17 | 0.47 | 0.56 |
| 2/21/17 | 0.62 | 0.35 |
| 3/8/17 | 1.02 | 1.1 |

46.     Due to rain gauge locations and incomplete weather data (for example, no data is available after April 2, 2017 for the Ocean Springs station), a comparison of data from the Biloxi and Ocean Springs weather stations fails to capture the complete set of rain events of significance that have occurred in the immediate vicinity of the East Biloxi Street Project. The chart Gulf Restoration Network included as Exhibit 3 to the Notice of Intent to Sue (attached/incorporated herein) fills in data gaps by describing photographs and video of violations related to localized rain events of significance as well as regional ones.

47.     Since the submission of the Notice of Intent to Sue, Gulf Restoration Network has

---

[2] While Exhibit 2 contains a list of 107 rain events, the rain data for March 25, 2016 is incorrect and is not used as a basis for this complaint.

taken photographs and video documenting that the conditions described in the Notice remain in

place, on the following additional dates:

- February 17, 2017
- March 11, 2017
- March 12, 2017
- March 25, 2017
- April 3, 2017
- April 25, 2017

48.     Pursuant to Section 309(d) of the Act, 33 U.S.C. § 1319(d), and the regulation

allowing for the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each

separate violation of the Act subjects Oscar Renda to a penalty of up to $37,500 per day per

violation for all violations occurring since August 4, 2014 up to and including November 2,

2015, and up to $51,570 for violations occurring after November 2, 2015.

**FIRST CLAIM FOR RELIEF**
(**<u>Failure to phase construction</u>**)

49.     Oscar Renda has failed to comply with the eight-part phasing-schedule

contemplated by the Large Construction Storm Water Permit and eight separate Pollution

Prevention Plans, to "sequence construction activities so as to concentrate work in certain areas

so as to minimize the amount of soil that is exposed at one time," or to claim with adequate

written justification that such phasing/sequencing is infeasible, in violation of permit condition

ACT5, No. T-8(F), and Section 1.2 of the applicable Storm Water Pollution Prevention Plans.

**SECOND CLAIM FOR RELIEF**
(**<u>Failure to develop best management practices based on site-specific conditions</u>**)

50.     Oscar Renda has failed to develop best management practices that "reflect the

specific conditions of the construction site," in violation of permit condition ACT5, No. T-4, and

Section 3.2 of the Storm Water Pollution Prevention Plans.

## THIRD CLAIM FOR RELIEF
### (<u>Inadequate structural controls</u>)

51.     Oscar Renda has failed to implement necessary structural controls including the diversion of flows from exposed soils and/or otherwise limiting runoff from exposed areas, silt fences, earth dikes, fiber rolls, drainage swales, outlet protection, sediment traps, check dams, perimeter controls, and equivalent sediment controls, in violation of permit conditions ACT5, Nos. T-2, T-3, T-6, T-7 & T-8; and Sections 3.0 and 3.2 of the Pollution Prevention Plans.

## FOURTH CLAIM FOR RELIEF
### (<u>Accumulation and migration of sediment-pollution</u>)

52.     Oscar Renda has failed to have adequate procedures in place for the removal of accumulated sediment and to timely mitigate and prevent the migration of soil and debris from the East Biloxi Street Project sites, in violation of permit conditions ACT5, No. T-10(A) to (C); and Section 3.2 of the Pollution Prevention Plans.

## FIFTH CLAIM FOR RELIEF
### (<u>Inadequate maintenance</u>)

53.     Oscar Renda has failed to maintain, in good working order, the storm water control devices actually used throughout the duration of construction, including prompt repair and removal of sediment buildup, in violation of permit condition ACT5, No. T-15; and Sections 3.2, 5.0 and 5.2 of the Pollution Prevention Plans.

## SIXTH CLAIM FOR RELIEF
### (<u>Ineffective plans and incomplete implementation</u>)

54.     Oscar Renda has failed to fully implement the Pollution Prevention Plans, install and maintain required structural practices and erosion controls, ensure best management practices, and amend the Pollution Prevention Plans where proven to be ineffective in controlling storm water pollution or preventing sediment from leaving the site, in violation of permit

conditions ACT6, Nos. S-1(1), (2), & (5), S-2(7), (8), (9); S-3(11).

## SEVENTH CLAIM FOR RELIEF
### (Violation of narrative water quality standards)

55.     Oscar Renda has failed to ensure that storm water discharge is free from both "[e]roded soils and other materials that will settle to form objectionable deposits in receiving waters," and "[s]uspended solids, turbidity and color at levels inconsistent with the receiving waters," in violation of permit condition ACT7, No. L-1.

## EIGHTH CLAIM FOR RELIEF
### (Lack of compliance and mitigation)

56.     Oscar Renda has violated its duty to comply and duty to mitigate, in violation of permit conditions ACT11, Nos. T-1, T-2.

## NINETH CLAIM FOR RELIEF
### (Failure to notify of noncompliance)

57.     Oscar Renda has failed to notify the Mississippi Department of Environmental Quality of both anticipated and unanticipated noncompliance as a result of significant rain events, in violation of permit condition ACT11, No. T-17.

## TENTH CLAIM FOR RELIEF
### (Filling waters of the United States without a permit)

58.     Oscar Renda has disposed of fill material in wetlands without a permit under section 404 of the Clean Water Act by dumping piles of earth, rock, and/or other construction materials directly into navigable waters, and by placing such piles next to sensitive receiving waters with ineffective or no erosion controls, thereby allowing the construction materials to wash into navigable waters.

## PRAYER FOR RELIEF

WHEREFORE, Gulf Restoration Network respectfully prays that this Court grant it the following relief:

(1)     A declaration that Oscar Renda's violations of the terms of the applicable Large Construction Storm Water Permit and Pollution Prevention Plans constitute violations of the Clean Water Act and its implementing regulations;

(2)     A declaration that Oscar Renda's deposition of fill in wetlands without a permit constitutes a violation of section 404 of the Clean Water Act and its implementing regulations;

(3)     An award of civil penalties in an appropriate amount based on the number of days in which the Oscar Renda was in violation of the Clean Water Act for each drain, outfall, or receiving waterbody, and each reporting and implementation violation, in each of the affected project areas;

(4)     An injunction requiring the Oscar Renda to take all actions necessary, including remediation of adverse impacts to aquatic resources and the implementation of best management practices to prevent future violations of the Clean Water Act;

(5)     Retention of jurisdiction of this matter to ensure compliance with its decrees;

(6)     An award of plaintiff's attorneys' fees, expert fees, and other costs; and

(7)     Such other and further relief as the Court finds proper in the premises.

Dated this 3rd day of August, 2017.

Respectfully submitted,

WALTZER WIYGUL & GARSIDE LLC

*/s/ Robert B. Wiygul*
Robert Wiygul, MS Bar #7348
1011 Iberville Dr.
Ocean Springs, MS 39564
Tel: (228) 872-1125
Fax: (228) 872-1128
robert@wwglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2017, I electronically filed the foregoing First Amended Complaint for Declaratory Relief, Injunctive Relief, and Penalties with the Clerk of the Court using the ECF system which sent notification of such filing to the following: Todd G. Crawford, MS Bar #102620 (counsel for Defendant), and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants: N/A.

*/s/ Robert B. Wiygul*
Robert Wiygul, MS Bar #7348