IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**GULF RESTORATION NETWORK**                                      **PLAINTIFF**

**V.**                                                                            **CIVIL NO.: 1:17-cv-130-LG-RHW**

**OSCAR RENDA CONTRACTING, INC.**                       **DEFENDANT**

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF KEVIN S. DILLON**

**Introduction/Overview**

Defendant, Oscar Renda Contracting, Inc., respectfully moves the Court to exercise its gatekeeping authority and exclude or otherwise limit the testimony of the Plaintiff's expert, Dr. Kevin S. Dillon. Although Dr. Dillon holds a Bachelor's Degree in Marine Biology, a Masters and Ph.D. in Oceanography and has done some Post Doctorate work in Environmental Science, he attempts to opine on issues that fall within the field of Geology. He is neither trained nor licensed to practice Geology, as required by Mississippi statutes.[1]

Beyond Dr. Dillon's lack of training, experience and licensure to opine in the field of Geology, his opinions should be excluded because he relies on virtually no data to support his conclusions. In reviewing Dr. Dillon's report, one is struck by the absence of underlying data. His report does not list facts, documents, photographs or other data he relied upon in formulating his opinions. In fact, the only site-specific data referenced anywhere in his report is a single photograph on page four. But the conclusions he draws from his review of that photograph are outside his area of expertise. They fall within the definition of Geology, not Oceanography.[2] And while he lists his opinions, he never provides the basis and reasons for his conclusions.

---

[1] See, e.g., The Registered Professional Geologist Practice Act of 1997, Ms. Code §73-63-1, et seq.
[2] See Affidavit of James J. Connors, attached as Exhibit "A."

Instead of investigating what environmental damage actually resulted from the Defendant's actions, he cites to a few articles and then tries to extrapolate conclusions that apply to this case while admitting he has not gathered any data because it would be an "expensive exercise."

The very language of his report makes it obvious he is engaging in guesswork, not scientific analysis. Consider the following excerpts from Dillon's report:

- The lack of adequate safeguards to trap sediments *has likely resulted in a large increase in sediment runoff* from Eastern Biloxi to Biloxi Bay . . .

- "*It is likely that the amount of delivered sediment is in the tens of millions of pounds*."

- Estimates of sediment yield only provide information on the amount of sediments delivered to receiving waters from the catchment. To examine where the sediment goes once entrained into storm water and delivered to nearby bayous and Back Bay, the transport directions and rates *would have to be measured. . .* This would be an extremely resource intensive and expensive exercise.[3]

- "*While no such studies have been conducted in Biloxi's bayous and Back Bay. . .*"

- ". . . construction sites can also affect many other water characteristics . . ."

- "Sediment inputs can affect water quality . . ."

These excerpts from Dr. Dillon's report confirm the absence of underlying data is not an oversight or a mere mistake. Instead of providing an actual analysis of scientific evidence, he engages in rampant speculation. He acknowledges he has not attempted to measure transport rates and directions because that "would be an extremely resource intensive and expensive exercise." On page four of his report, he suggests the construction events can increase sediment and turbidity levels above what can be expected with natural events. Yet, he made no effort to identify previous sediment and turbidity levels in any of the affected bayous or compare them to actual sediment or turbidity levels taken during the project or in conjunction with his report. His report never says whether sediment and turbidity levels were increased, decreased or remained

---

[3] Kevin S. Dillon's report and CV is attached as Exhibit "B."

2

the same. He apparently intended to imply these levels increased, but he cites no data - - empirical or otherwise - - to support his conclusion.

Nor did he conduct any testing or take any measurements to assess actual effects on organisms. Instead, he speaks in terms of what might happen versus what actually happened. There is literally no data of any kind referenced in any portion of Dr. Dillon's report. While he does reference scientific literature of studies at other locations, he does not list any documents he reviewed that are specific to this case – save and except for the lone photograph on page four of his report. As noted, his analysis of that photograph falls outside his area of expertise, and a true expert would not rely on a single photograph taken by someone else.

Based on the foregoing, Oscar Renda Contracting, Inc. asks this court to exercise its gatekeeping authority and exclude any opinion offered by Dr. Dillon in the field of Geology. This would include conclusions drawn from the only photograph referenced in his report. The balance of Dr. Dillon's opinions, such as they are, should be excluded because they are not based on any data and do not follow a reliable, testable, scientific method, all as outlined below.

## Legal Analysis

In order for expert testimony to be admissible under *Daubert*,[4] it must be both relevant and reliable. Federal Rule of Evidence 702 governs the admission of expert testimony.

> If scientific, technical, or specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principals and methods, and (3) the witness has applied the principals and methods reliably to the facts of the case.

Rule 702 assigns to the District Court a gatekeeping role to ensure that scientific testimony is both reliable and relevant.[5]

---

[4] *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993).

In *Daubert*, the United States Supreme Court enumerated five non-exclusive factors to consider when assessing whether the proffered experts' methodology is reliable. These factors are:

(1) Whether the expert's theory can be or has been tested,
(2) Whether the theory has been subject to peer review and publication,
(3) The known or potential rate of error of a technique or theory when applied,
(4) The existence and maintenance of standards and controls, and
(5) The degree to which the technique or theory has been generally accepted in the scientific community.[6]

The *Daubert* factors are illustrative, not exhaustive. The reliability analysis must remain flexible. Not every *Daubert* factor will be applicable in every situation, and the court has discretion to consider other factors it deems relevant.[7] "These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered."[8] The court may consider other factors, if relevant, such as "whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion," and "whether the expert has adequately accounted for obvious alternative explanations."[9]

The point of the *Daubert* analysis is "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[10]

"The proponent of expert testimony. . . has the burden of showing that the testimony is reliable[,]. . . and must establish the admissibility requirements by a preponderance of the

---

[5] See, *Curtis v. M & S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir. 1999).
[6] See *Daubert,* 509 U.S. at 593-94; *Burleson v. Texas Department of Criminal Justice,* 393 F.3d, 577, 584 (5th Cir. 2004).
[7] *Kumho Tire Company v. Carmichael,* 526 U.S. 137, 151, 119 S.Ct. 1167, 133 L.Ed. 2d 238 (1999).
[8] *Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir. 2007).
[9] F.R.E. 702 Advisory Committee's Notes (2000 Amendment).
[10] *Kumho Tire Company .v Carmichael,* 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L. Ed. 2d 238 (1999).

evidence. . ."[11]  An expert opinion is deemed reliable if it is based upon sufficient facts and data, and it is the product of reliable principals and methods.[12]  Otherwise, it constitutes "unsupported speculation or subjective belief."[13]  The existence of sufficient facts and a reliable methodology is in all instances mandatory.[14]  "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."[15]

Federal Rule of Civil Procedure 26 provides that an expert's report must contain:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the facts or data considered by the witness informing them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)    the witnesses' qualifications including a list of all publications authored in the previous ten years;

(v)     a list of all other cases in which, that during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

While Dr. Dillon lists his opinions in conclusory form, his report does not list the basis and reasons for those opinions.  His report does not include the facts or data he considered in forming his opinions.  Dillon never lists any documents, photographs or other evidence he reviewed to prepare his report.  The only exception is the photograph contained on page four of his report.

---

[11] *Previto v. Ryobi N. AM., Inc.,* 766 F. Supp. 2d 759, 765 (S.D. MS 2010) (citations and internal marks omitted).
[12] F.R.E. 702(b)(c).
[13] *Johnson v. Arkema, Inc.,* 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Daubert,* 509 U.S. at 590).
[14] *Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir. 2007). "
[15] *Previto,* 766 F. Supp.2d at 771, quoting *Hathaway,* 507 F.3d at 318 (internal marks omitted).

There are three threshold issues for the admission of expert testimony. The first requirement is that the expert be qualified. The second is that the expert's testimony is relevant, and the third is that the expert's testimony be reliable.

**Dr. Dillon is not qualified to provided expert testimony in the field of Geology**

"Before a court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'"[16] "A District Court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[17] The Court must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony."[18] The court must ensure that the expert will actually be testifying on the issues or subject matter within his or her area of expertise.[19] An expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which he or she is not qualified.[20]

According to his curriculum vitae,[21] Dr. Dillon holds a Bachelor's Degree in Marine Biology and advanced degrees in Oceanography. He has no training, education, experience or licensure in the field of Geology.

---

[16] *United States v. Cooks,* 589 F.3d 173, 179 (5th Cir. 2009) (quoting Rules 702).
[17] *United States v. Cooks,* citing *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999).
[18] *United States v. Tin Yat Chin,* 371 F.3d 31, 40 (2d Cir. 2004).
[19] *Staql v. Delta Airlines, Inc.,* 117 F. 3d 76, 80 (2d Cir. 1997).
[20] In Re *Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,* MDL No. 1358, M21 – 88 2008 U.S. Dist. Lexis 37331, 2008 Westlaw 1971538, at *6 Note 48 (So. D. N.Y. May 7, 2008). See also, *Malletier v. Dooney & Bourke, Inc.,* 525 F. Supp.2d 558, 642 (So. D. N.Y. 2007) ("An expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witnesses' area of expertise is prohibited by Rule 702.")  In *Accord Lebron v. Secretary of Florida, Department of Children and Families,* 772 F3d 1352, 1369 (11th Cir. 2014) ("Expertise in one field does not qualify a witness to testify about others."); *United States v. Paul,* 175 F.3d 906, 912 (11th Cir. 1999) (holding that an expert's qualifications in one field does not make him any more qualified to testify as an expert in another field than a lay person who read the same articles).
[21] See Exhibit "B."

"The Registered Professional Geologist Practice Act of 1997" defines Geology as "the science which includes the study of the earth and its origin and history. Geology includes the investigation of the earth's constituent rocks, minerals, solids and fluids, including surface and underground waters, gases and other materials and the study of the natural agents, forces and processes which cause changes in the earth."[22] It defines the "Practice of Geology" as "any professional service to determine and evaluate the geology of the earth requiring geologic education, training, experience and the application of special knowledge of the mathematical, physical and geological sciences to those services, including, but not limited to, consultation, investigation, evaluation, planning, surveying (unless licensed under Section 73-13-71 through 73-13-99), mapping and inspection of geologic work."[23] Similarly, a "Registered Professional Geologist" is a "Geologist who has met the academic and experienced qualifications established by the Board and has been issued a Certificate of Registration as a Registered Professional Geologist by the Board."

Miss. Code. 73-63-7(3) provides that "a person shall be construed to engage in the practice of Geology or offer to practice Geology under this Chapter if that person:

(a) practices any branch of Geology;

(d) makes geologic determinations and evaluations which may affect the public welfare, including, but not limited to, the following activities: *** "prevention and remediation of contamination of the earth, earth materials and water from the improper disposal or accidental spills; *** the suitability for construction projects including excavations, buildings, dams, highways and other structures which may be affected by floods, landslides, earthquakes, sinkholes, erosion, and expensive or contractive earth and earth materials."

Subpart 5(d) of that section contains an exemption that reads as follows: "The following activities shall not require registration under this chapter:

---

[22] See Miss. Code 73-63-5(f).
[23] See Miss. Code 73-63-5(h).

> (d) <u>work customarily performed by</u> physical or natural scientists such as chemist, archeologist, geographers, <u>oceanographers</u>, pathologists, and soil scientists, <u>if that work does not include the planning and execution of geologic investigations, being in responsible charge of geologic work or the drawing of geologic conclusions in making recommendations regarding the practice of geology</u>."

Dr. Dillon may attempt to point to this limited exemption for Oceanography as a basis to engage in the unauthorized practice of Geology. Oceanography encompasses the study of the Earth's oceans and coastal waters, including their delimitation, chemistry, biology, and physics (currents, temperature, salinity, density).[24]

To the extent that Dr. Dillon attempts to offer opinions that fall within the scope of Oceanography, he may possess sufficient qualifications. However, he lacks qualifications and the licensure necessary to opine in the field of Geology.

In the context of Dr. Dillon's report, he provides an opinion based upon his review of a single photograph. That opinion is at the bottom of page three and reads as follows:

> For example, the picture below is from the un-named bayou in East Biloxi, adjacent to Back Bay Blvd. This area receives drainage directly from the road construction project. Large sediment deposits are evident. These deposits contain obvious coarse material such as rocks. The natural bottom composition of bayous in this area is an equal mix of sand and silt (*Darrow, et al,* 2016).

The photograph is on page four of Dr. Dillon's report. This photograph and the description of same are the only site-specific data referenced anywhere in Dr. Dillon's report. That opinion falls within the field of Geology as defined by Miss. Code 73-63-5(f).[25]

Dr. Dillon is not qualified to provide opinions in the field of Geology, and Oscar Renda asks the Court to issue an Order in Limine accordingly.

---

[24] See Exhibit "A."
[25] See Exhibit "A."

**Dr. Dillon's Opinions are not Reliable because they are not Supported by Adequate Data**

As noted, Dr. Dillon's report does not identify any documents that he reviewed in conjunction with preparation of his report. There is nothing in the report to suggest that he conducted any field work. There is no listing of documents, photographs or data that he reviewed, although we know he reviewed at least the one photograph incorporated on page four of his report. Dr. Dillon appears to attempt to excuse the lack of site specific data in his report to time and expense: "This would be an extremely resource intensive and expensive exercise." In other words, Dr. Dillon performed no field analysis. He took no measurements. He performed no tests. He took no photographs. He did not review any documents. He mainly cited the work of others and then attempted to extrapolate conclusions without any data specific to this case. His report is the classic definition of an expert who has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion."[26]

Dillon's report fails to comply with F.R.C.P. 26 because it does not list the facts or data considered by the witness in forming his opinions. As noted, the only thing that could be considered site-specific data is the lone photograph on page four. From that photograph, he offers an opinion that falls within the field of Geology. Regardless, there are simply insufficient facts or data identified in his report to comport with the requirements of *Daubert* and F.R.C.P. 26.

In terms of the *Daubert* factors, there is no way for the expert's opinions to be tested because he has not identified any underlying data or method for his conclusions. Dr. Dillon makes no pretense about having tested his theory. His opinions consist of *Ipse Dixit*. He provides nothing more than credentials and his subjective opinions. In this context, it is helpful to review Dr. Dillon's conclusions:

---

[26] F.R.E. 702 Advisory Committee's Notes (2000 Amendment).

### 1. The sediment flows from the construction project in East Biloxi to Biloxi Bay were substantial and conservatively in the tens of millions of pounds.

Dillon cites no factual support for this conclusion. At most, he references literature for the *potential* for sediment runoff, while admitting that he himself has not conducted any actual field testing to support his hypothesis. In fact, as originally stated, his report simply says, "<u>It is likely</u> that the amount of delivered sediment is in the tens of millions of pounds." There is no factual support for this conclusion in his report. The existence of sufficient facts and a reliable methodology is in all instances mandatory.[27] Because Dillon cites to no facts, his opinion must be excluded.

### 2. The area affected by this sediment flow is conservatively the entire middle section of the Bay.

Dr. Dillon's second opinion is dependent upon the first opinion. One must first accept the premise that sediment flows from the construction project into Biloxi Bay were "substantial and conservatively in the tens of millions of pounds." Consequently, this second opinion fails because there is no support for the first opinion. Beyond that, however, Dr. Dillon has done nothing to confirm the geographic scope of the alleged affected area. He has taken no measurements. He has made no studies. He does not even suggest he reviewed a photograph of the affected area. He has formulated a hypothesis, but done nothing to test or otherwise verify his theory. At most, he refers to a separate study involving gypsum in a different geographic area, and then tried to extrapolate a hypothesis for this case. Again, the existence of sufficient facts and a reliable methodology is in all instances mandatory.[28] Dillon's opinion is the epitome

---

[27] *Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir. 2007). "
[28] *Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir. 2007). "

of an expert who "unjustifiably extrapolated from an accepted premise to an unfounded conclusion."[29]

F.R.C.P. 26 requires the report to set out the facts and data considered by the witness in forming his opinion, as well as the basis and reasons for his opinions. An expert report should be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial.[30] Dr. Dillon's report fails this basic standard. There is nothing site specific to this location that would allow Dr. Dillon to draw the conclusions he made. While he attempts to draw analogies to his own study pertaining to "a gypsum stack at a fertilizer plant in Pascagoula," he makes no effort to compare the properties of gypsum with the geology in Biloxi. Of course, if he did, that would be an opinion in the field of Geology - - a field in which he is not qualified or licensed. It is also telling that the gypsum study actually involved taking measurements, which eventually came to a stop because of lack of funding: "Transport out of a title creek was not evaluated due to funding constraints." In other words, to evaluate transport, Dr. Dillon would have needed to spend time and resources – something he did not do in the current matter.

Dr. Dillon's third opinion fails both the relevant and reliable components of *Daubert*. It reads as follows:

> **3. Sediment inputs have substantial and far reaching impacts on marine species and habitats. The duration of these impacts is variable, but is clearly extended by repeated sedimentation events.**

This opinion is not relevant to the issues before the court. The question is not whether sediment inputs in the abstract <u>might</u> have far reaching impacts on marine species and habitats, but whether they did. In this respect, Dr. Dillon's third opinion is likewise dependent upon the

---

[29] F.R.E. 702 Advisory Committee's Notes (2000 Amendment).
[30] See, *Salgado v. General Motors Corp.*, 150 F.3d 735 at 742 N.6 (7th Cir. 1998) (internal citations omitted).

first and second opinions, both of which have been demonstrated to be unreliable. He offers no opinion on how long these adverse effects may last, saying simply that they are "variable." It is obvious that he has done no analysis to determine the amount, effected area or duration of unspecified sediment inputs. He also suggests that substantial and far reaching impacts on marine species and habitats "are clearly extended by repeated sedimentation events."

Dr. Dillon has taken his unsupported conclusion that sediment flows in the tens of millions of pounds flowed into Biloxi Bay and extended that conjecture to assume the entire middle section of the Bay was affected, without assessing any data at all. His third opinion builds further upon that wobbly foundation and assumes that unspecified marine species and habitats might have been adversely affected. Further, he suggests these adverse effects are "substantial and far reaching," even though he has done nothing to determine the amount, frequency, area or effect of the supposed sediment pollution. This is literally junk science that could only serve to mislead the trier of fact.

We have already addressed Dr. Dillon's fourth opinion, but it bears repeating at this point.

**4. "In the case of the unnamed bayou depicted in the photos, there are large sediment deposits directly adjacent to the storm water outfalls, that are clearly not natural deposits."**

As previously noted, Dr. Dillon is offering an opinion in the field of Geology, a field for which he is neither qualified, experienced nor licensed. Unlike every other opinion in his report, at least this opinion is based upon his review of a single photograph. However, as demonstrated by the affidavit of Dr. James Connors, a true, licensed geologist would not rely upon a single photograph to draw such a scientific conclusion.[31] Among other problems, the scientist is then subject to the bias of the photographer, who can select any angle or area of view, exposure,

---

[31] See Exhibit "A."

lighting, processing algorithm, etc., to fit any pre-existing narrative, whether true or false. Additionally, a single photograph, in isolation, does not allow Dr. Dillon to comment upon the condition of the unnamed bayou <u>before</u> the alleged pollution event. We question whether qualified, licensed geologists would draw conclusions based upon a single photograph - - and particularly not a photograph he did not even take himself.

Further, the fallacy in Dillon's conclusion is demonstrated by Dr. Connors' report. Dr. Connors has identified a published photograph from another geological study that plainly shows the existence of sand and pebbles in the Prairie Formation of Gulfport, Mississippi.[32] Dr. Dillon tried to say the rocks in one photograph were not naturally occurring, but published geological studies in the same area show he is mistaken. This is not simply a matter of two experts with different opinions. The sole basis for Dr. Dillon's opinion is his review of a single photograph. Yet, a second photograph taken years earlier reflects naturally occurring rocks and pebbles that Dr. Dillon attributes solely to the construction project. Thus, the premise of Dr. Dillon's opinion is fundamentally flawed and unsupported. It is simply not proper to draw a formal, scientific conclusion from review of a single photograph, particularly when other photographs demonstrate the opposite conclusion.

Thus, not only is Dr. Dillon's fourth opinion outside the realm of his area of expertise, it is not supported with sufficient data, analysis or explanation.

## **Conclusion**

Based on the foregoing, it naturally follows that Dr. Dillon should be excluded from testifying in this matter. He is not qualified to opine in the field of Geology. With the exception of one photograph on page four of his report, Dr. Dillon does not list any documents, photographs, measurements or other data he relied on to formulate his opinions. For that one

---

[32] See page 16 of Dr. Connors' report.

photograph, he attempts to opine in the field of Geology, which is outside his area of expertise. A true expert would not reach such a conclusion based upon his review of a single photograph he did not take himself.

Respectfully submitted, this 19th day of January, 2018.

        OSCAR RENDA CONTRACTING, INC., DEFENDANT

        BY: FOWLER RODRIGUEZ

        By: */s/Todd G. Crawford*
        Todd G. Crawford (MBN 102620)
        FOWLER RODRIGUEZ
        2501 14th St., Suite 202
        Gulfport, MS 39501
        Telephone: (228) 206-0033
        E-Mail: tcrawford@frfirm.com
        &
        400 Poydras Street, 30th Floor
        New Orleans, Louisiana 70130
        Telephone: (504) 523-2600
        Facsimile: (504) 523-2705

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of January, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        */s/ Todd G. Crawford*