IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**GULF RESTORATION NETWORK**                                                    **PLAINTIFF**

v.                                                   **CAUSE NO. 1:17CV130-LG-RHW**

**OSCAR RENDA CONTRACTING, INC.**                                 **DEFENDANT**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
<u>DEFENDANT'S MOTION TO EXCLUDE TESTIMONY</u>**

BEFORE THE COURT is the [30] Motion in Limine to Exclude Testimony of Kevin S. Dillon filed by the defendant Oscar Renda Contracting, Inc. The Motion has been fully briefed. After due consideration, the Court finds that the Motion should be granted in part and denied in part.

BACKGROUND

This Clean Water Act case was initiated by Gulf Restoration Network, which is "a coalition of environmental, social justice, citizens' groups, and individuals committed to protecting and restoring the valuable resources of the Gulf of Mexico to an ecologically and biologically sustainable condition." (Am. Compl. 4, ECF No. 14). The Network seeks 1) a declaration that the defendant, Oscar Renda Contracting, Inc., violated the Clean Water Act and its implementing regulations; 2) civil penalties for the violations; 3) an injunction requiring Oscar Renda to remediate the adverse impacts to aquatic resources; and 4) an award of attorneys' fees and costs. (*Id*. at 3-4).

The Network retained as its expert Kevin S. Dillon, a coastal sciences associate professor at the University of Southern Mississippi. Dillon's report is a

discussion of the probable amount and movement of sediments created by Oscar Renda's road construction project into Biloxi Back Bay. Dillon reaches the following conclusions:

> 1) The sediment flows from the construction project in East Biloxi to Biloxi Bay were substantial and conservatively in the tens of millions of pounds.
>
> (2) The area affected by this sediment flow is conservatively the entire middle section of the bay.
>
> (3) Sediment inputs have substantial and far reaching impacts on marine species and habitats. The duration of these impacts is variable, but are clearly extended by repeated sedimentation events.
>
> (4) In the case of the unnamed bayou depicted in the photos, there are large sediment deposits directly adjacent to the storm water outfall, that are clearly not natural deposits.

(Def. Mot. Exclude Ex. B 5, ECF No. 30-2).

Oscar Renda objects to introduction of Dillon's fourth opinion above, because it concerns geology rather than his areas of expertise – oceanography and environmental science. Oscar Renda argues that the one photograph of the site supporting Dillon's opinion, taken by someone else, is not adequate evidence from which to draw any conclusions about sediment deposits. Oscar Renda also objects that Dillon does not rely on any facts or data in drawing any of his conclusions; Dillon did not visit the site, conduct any testing, or rely on any tests done at the site. Thus, Oscar Renda argues that Dillon is not qualified to provide expert testimony in the field of geology, and his oceanography/environmental science opinions are not reliable because they are not supported by adequate data.

DISCUSSION

A. Legal Standard

"Before certifying an expert and admitting his testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (citations omitted). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The party offering the expert has the burden of proving, by a preponderance of the evidence, that the proffered testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

"An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). Whether he is qualified to testify as an expert is a question of law. *Mathis*, 302 F.3d at 459 (citing Fed. R. Evid. 104(a)). An expert may not "go beyond the scope of his expertise in giving his opinion." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) However, "Rule 702 does not mandate that an expert be highly qualified in order to

testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

  B. Dillon is Qualified to Testify About the Photograph

Oscar Renda's challenge to Dillon's qualifications relate to Dillon's analysis and conclusions regarding the photograph purportedly showing a nearby bayou area. Oscar Renda contends that Dillon is actually engaged in the unauthorized practice of geology when he offers his opinion about what the photograph shows. According to Oscar Renda, Mississippi Code § 73-63-7(3) requires Dillon to be a "registered professional geologist" to opine in the field of geology. Oscar Renda argues that Dillon cannot testify about his fourth conclusion above – that the "large sediment deposits directly adjacent to the storm water outfall" are "clearly not natural deposits" – without being a registered professional geologist. The Network simply argues in response that Dillon is qualified by "his areas of research and competence" to testify "regarding the characteristics and effects of polluted runoff of the kind that ORC caused in this case." (Pl. Resp. 1, ECF No. 38).

The Court concludes that Dillon is qualified to testify to his fourth conclusion. A "witness qualified as an expert is not strictly confined to his area of practice, but may testify concerning related applications; 'a lack of specialization does not affect the admissibility of the opinion, but only its weight.'" *Meadowcrest Living Ctr., LLC v. Hanover Ins. Co.*, No. 06-3210, 2008 WL 2959707, at *6 (E. D. La. July 30, 2008) (citing *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)). "[I]t is an

abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (citation and quotation marks omitted). Dillon's lack of a "registered professional geologist" designation should not prevent him from testifying about opinions touching his own areas of expertise in oceanography and environmental science. Dillon's opinion about what the photograph shows is the type of testimony that should be subjected to vigorous cross-examination rather than exclusion. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). This portion of the Motion to Exclude will be denied.

C. Dillon's Remaining Testimony is Not Reliable

Oscar Renda argues that Dillon's other opinions are not reliable, because they are not based on adequate data. As noted earlier, the report consists mainly of a discussion of how sediment run-off impacts aquatic environments. Oscar Renda argues that what is missing is a link between this general discussion and the Biloxi Back Bay, the construction site, or the materials alleged to be causing pollution in this case. Dillon took no measurements, performed no field analysis or tests, took no photographs, and did not review any documents specific to the Biloxi Back Bay.

The Gulf Restoration Network contends that Dillon's supporting data is sufficient, in that he "cites the basic facts concerning the massive construction project at issue here, his own research in low-energy systems like Biloxi Bay, and 24 separate research publications on sediment and storm water issues." (Pl. Resp. 1,

ECF No. 38).

The Court's review of the report does not reveal any basic facts about the construction project. Dillon cites to "previous work [that] has shown that sediment runoff is higher from construction sites than many other types of land use." (Def. Mot. Ex. B 1, ECF No. 30-2). He states that "[t]he lack of adequate safeguards to trap sediments has likely resulted in a large increase in sediment runoff from eastern Biloxi to Biloxi Bay and its associated bayous and tributaries," although he does not describe the safeguards employed, if any, or what safeguards would be adequate. (*Id*.). Dillon estimates that a conservative estimate of the disturbed area is in excess of 150 acres, and "it is likely that the amount of delivered sediment is in the tens of millions of pounds" for the four years the construction project has been underway. (*Id*.). He does not describe the construction project or otherwise explain how he arrived at his estimate of the disturbed area or delivered sediment. Dillon then makes it clear that he has not made any actual measurements of the effect of the estimated sediment runoff in the Biloxi Back Bay.

> Estimates of sediment yield only provide information on the amount of sediments delivered to receiving waters from the catchment. To examine where the sediment goes once entrained into stormwater and delivered to nearby bayous and Back Bay, the transport directions and rates would have to be measured for accurate estimates since transport can vary greatly due to differences in sediment sizes and the intensity of stormwater flow. This would be an extremely resource intensive and expensive exercise.

(*Id*.). Further, "no [ ] studies [of the effects of construction activities] have been conducted in Biloxi's bayous and Back Bay." (*Id*. at 2).

-6-

A court may rightfully exclude expert testimony when an expert has extrapolated data, and there is "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998). The Court is not required "to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co.*, 522 U.S. at 146. It appears that Dillon has formed opinions about sediment flows into the Biloxi Back Bay from Oscar Renda's construction project simply from his knowledge that these effects have been measured in other instances. His opinions are not based on any measurements or personal observations of the construction project or the sediment runoff. Under these circumstances, Dillon offers only his ipse dixit that harmful sediment runoff has occurred as a result of the construction project. For this reason, Dillon will be allowed to offer his opinion testimony about sediment runoff and its effects on the environment as a general matter. However, he will be prohibited from testifying about the conclusions he has drawn by applying these general principles to this case. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999) ("Dr. Reyna's use of a general methodology cannot vindicate a conclusion for which there is no underlying medical support.").

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [30] Motion in Limine to Exclude Testimony of Kevin S. Dillon filed by the defendant Oscar Renda Contracting, Inc. is **GRANTED IN PART AND DENIED IN PART** as set out above.

**SO ORDERED AND ADJUDGED** this the 9th day of May, 2018.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE