IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**GULF RESTORATION NETWORK**                                   **PLAINTIFF**

v.                                             **CAUSE NO. 1:17CV130-LG-RHW**

**OSCAR RENDA CONTRACTING, INC.**                            **DEFENDANT**

### ORDER DENYING MOTIONS TO EXCLUDE OR LIMIT EXPERT TESTIMONY

BEFORE THE COURT are the three motions to exclude or limit the testimony of experts designated in this case: 1) the [99] Motion to Limit Testimony of James Connors filed by Plaintiff Gulf Restoration Network (the "Network"); 2) the [103] Motion to Exclude Additional Testimony of Kevin Dillon filed by Defendant Oscar Renda Contracting, Inc. ("Oscar Renda"); and 3) the [105] Motion in Limine to Exclude or Limit Testimony of Renee Robertson filed by Oscar Renda. Each Motion has been fully briefed and carefully considered. In all instances, the Court finds that the challenged testimony should not be excluded. The Motions will be denied.

#### BACKGROUND

This Clean Water Act case was initiated by Gulf Restoration Network, which is "a coalition of environmental, social justice, citizens' groups, and individuals committed to protecting and restoring the valuable resources of the Gulf of Mexico to an ecologically and biologically sustainable condition." (Am. Compl. 4, ECF No. 14.) The Network complains that Defendant Oscar Renda has allowed "massive flows of polluted water into Biloxi Bay" and connected bayous while performing

work on the East Biloxi Street Repair Program. (Am. Compl. 2, ECF No. 14.) The Network seeks 1) a declaration that Oscar Renda violated the Clean Water Act and its implementing regulations; 2) civil penalties for the violations; 3) an injunction requiring Oscar Renda to remediate the adverse impacts to aquatic resources; and 4) an award of attorneys' fees and costs. (*Id.* at 3-4.) The Network provided Oscar Renda with the pre-suit notice required by the Clean Water Act, alleging that Oscar Renda "has violated and remains in continued violation of the terms of the Large Construction Storm Water Permit . . . and eight phase-specific Storm Water Prevention Plans . . . associated with the City of Biloxi Street Repair Program." (Compl. Ex. 1, at 1, ECF No. 1-1.)[1] The Network states that the "violations began shortly after the August 4, 2014 start date of the 55-mile linear construction project and have continued with each subsequent rain event of significance through the present." (*Id.* at 9).

DISCUSSION

**1. Legal Standard**

"Before certifying an expert and admitting his testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (citations omitted). Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the

---

[1] The Notice was not attached to the Amended Complaint, so the Court refers to the document attached to the original Complaint.

> trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The party offering the expert has the burden of proving, by a preponderance of the evidence, that the proffered testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

"An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). Generally, "questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion." *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *14.38 Acres of Land*, 80 F.3d at 1077). Accordingly, expert opinions which overlook certain data are not typically excluded on that basis. *Moss v. Ole South Real Estate, LLC*, 933 F.2d 1300, 1307 (5th Cir. 1991). Rather, they are admitted to allow the jury to fulfill its role as the proper arbiter of disputes between conflicting opinions. *14.38 Acres of Land*, 80

F.3d at 1077. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 597, 592-93 (1993)). Rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702, adv. Comm. Notes (2000).

**2. James Connors**

James Connors, retained by Oscar Renda, is a Mississippi-licensed professional geologist specializing in hydrology, hydrogeology, and environmental science. (Connors Rep. 1, ECF No. 84-7.) He formulated the following opinions about the effects of the project: 1) Oscar Renda is adequately managing stormwater; 2) the large-scale environmental damage claimed is not possible; 3) the sediment deposit claimed is unsupported and unlikely; and 4) even if true, the claimed sediment deposit is insignificant.

Connors' report describes the characteristics of the Biloxi Back Bay affecting sediment movement and deposit. Broadly summarized, Connors' report explains that the soils in the Back Bay area are about seventy-five percent sand with high potential for water infiltration rather than runoff during rainfall. The relatively small silt and clay content of the soil requires very high water velocities to mobilize, and these intense rainfall events occur rarely in the area. Sand requires less energy to mobilize, and if there is sand in the runoff, it precipitates out within a few yards of the discharge pipes into the Back Bay. Connors visited fourteen stormwater

outfalls and saw almost no evidence of run-off related sedimentation; most locations were completely free of sediment. Connors' observations were in line with the Mississippi Department of Environmental Quality's site inspection earlier in the year. Connors saw no evidence that any sediment was carried into the Back Bay. Even if all of the deposition into the Back Bay described by the Network occurred, the yearly rate alleged to be caused by the project is 0.004 inches, while the natural yearly rate for the Biloxi Bay was measured at 0.22 inches. The bottom of the Back Bay is naturally fine silts and clays, and therefore periods of low water clarity and high turbidity have always occurred.

The Network argues that the opinions expressed above are mere *ipse dixit* because Connors has no actual knowledge of 1) the frequency and composition of storm water runoff; 2) whether site-specific conditions produce runoff that differs from the general studies of the area; and 3) the extent of sediment deposition that has occurred. Further, the Network contends that because Connors has not been present during a rainfall event, his opinion of Oscar Renda's storm management efforts is meaningless.

The Network's objections go to the weight of Connors' testimony rather than its admissibility. His opinions are based on data and studies of the area at issue in this case, and he observed conditions existing there that he believed were consistent with the data. Connors did not have to witness runoff during a rainfall event to observe the effects of runoff and explain how the observed effects were significant to his opinions. Further, Rule 703 explicitly contemplates expert opinions based on

facts or data not personally observed or gathered by the expert. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). Accordingly, the Court overrules the Networks' objections to Connors' expert opinion testimony.

### 3. Kevin Dillon

Kevin Dillon is a coastal sciences associate professor at the University of Southern Mississippi retained as an exert by the Network. The Court has already limited the admission of the expert opinions expressed in Dillon's initial report. (*See* Mem. Op. & Order Granting in Part & Denying in Part Def. Mot. to Exclude Testimony, May 9, 2018, ECF No. 73.) The [103] Motion now before the Court concerns Dillon's supplemental report, which Oscar Renda argues is untimely and unreliable because it is based on a small data set, among other things. Oscar Renda seeks either exclusion of the supplemental report under Fed. R. Civ. P. 37(c)(1) or a continuance of the trial in order to respond to the newly disclosed data.

If considered a supplemental report, the disclosure was timely. The discovery deadline in this case was July 16, 2018, at which time expert disclosure supplementation was also due. L.U. Civ. R. 26(a)(5). Dillon's supplemental disclosure was made April 18, 2018 – three months before the discovery deadline.

However, Oscar Renda argues that the report is not truly supplementation because Dillon could have collected the data in time to include an analysis in his initial report. Dillon only did so after Oscar Renda objected to the lack of data and analysis specific to the Biloxi Back Bay.

Rule 26(e)(1)(A) allows a party to supplement when it "learns that in some material respect the disclosure or response is incomplete or incorrect." "As a general rule, '[a] supplemental disclosure under Rule 26(e)(1)(A) is timely if it is made as soon as possible' after the party learns of the deficiency." *Dykes v. Cleveland Nursing & Rehab. Ctr.*, No. 4:15-CV-76-DMB-JMV, 2018 WL 3058870, at *4 (N.D. Miss. June 20, 2018) (citations omitted). Nevertheless, "the rule is not a basis to make material additions to an initial report." *Thang Quoc Pham v. Tyson Farms, Inc.*, No. 3:17-CV-125-DPJ-FKB, 2018 WL 4178029, at *9 (S.D. Miss. Aug. 30, 2018).

The additions here are material. Where Dillon's initial expert report contained only general statements concerning sediment movement and no data specific to the body of water at issue in this case, the supplemental report contains Dillon's measurements of water turbidity in various locations in the project area during different weather conditions. These measurements could have been taken and incorporated in Dillon's initial expert report. The only explanation for Dillon's failure to do this was, as stated in his initial report, the prohibitive cost of testing. The supplementation could be disallowed for that reason. *See Cutler v. Louisville Ladder, Inc.*, No. 4:10-4684, 2012 WL 2994271, at *5 (S.D. Tex. July 20, 2012) ("Because Defendants have made no persuasive showing that the testing in the Supplemental Report could not have been conducted in compliance with the DCO's November 2 deadline, the untimely disclosure is not substantially justified.").

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Whether the non-compliance was substantially justified or harmless turns on the following four-factor test: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice." *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993) (citation omitted). "The admission or exclusion of expert testimony is a matter left to the discretion of the trial court . . . ." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir. 1995).

The Court finds the Network's non-compliance to be harmless. The supplementation concerns the central issue of this case, and it was disclosed three months prior to expiration of the discovery deadline, allowing Oscar Renda ample time to challenge Dillon's conclusions. Moreover, there is no surprise in Dillon's water turbidity data, given that Oscar Renda's expert Connors has already addressed and given his own opinion on the subject. Dillon's supplemental expert report will not be excluded on timeliness grounds, and no continuance is necessary to avoid prejudice to Oscar Renda.

Oscar Renda also objects to the reliability of the results of Dillon's turbidity testing, contending that Dillon used too few sample locations, and one testing session was during a storm event and at a different tidal stage than the other.

Oscar Renda argues that the sampling locations show bias, and questions the utility of sampling water from standing puddles on an unpaved road. These objections go to the basis for Dillon's opinion and are "fodder for cross-examination" rather than a reason to exclude the contents of the supplemental report. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, No. 17-30742, 2018 WL 4932716, at *3 (5th Cir. Oct. 10, 2018). The opinions expressed in Dillon's Supplemental Report will not be excluded.

**4. Renee Robertson**

Renee Robertson is a professional engineer retained by the Network to assess "a sample of stormwater controls and management provided by Oscar Renda Contracting Inc." to determine whether they were "compliant with the substantive requirements of stormwater controls, inspections, and management provided in the Storm Water Prevention Plans." (Mot. Ex. B, at 1, ECF No. 105-2.) Robertson authored original and supplemental expert reports. Oscar Renda asserts that Robertson's experience as a civil engineer who has designed storm water controls does not qualify her to opine about the violations alleged in this case. Oscar Renda questions whether expert testimony is necessary at all to prove a violation of the Clean Water Act, given that the Network claims that a lay person could opine on the same issues. Oscar Renda also makes the following specific objections to introduction of Robertson's opinions: 1) Robertson's expert opinion testimony must be limited to the specific locations she examined in her reports; she cannot extrapolate from her examples to all of the locations at issue in this lawsuit; 2)

Robertson's opinions on the lifespan and estimated costs of stormwater controls are without an adequate basis; and 3) certain opinions are based on unsupported assumptions.

Oscar Renda objects that 1) Robertson improperly drew conclusions about the entirety of Oscar Renda's pollution controls from a sample of locations; 2) Robertson's opinion on the lifespan of the sediment barriers is not independent – she simply refers to an average lifespan published by the Georgia Soil and Water Conservation Commission; and 3) Robertson improperly relied on Oscar Renda's bid price for stormwater controls because she has no information about Oscar Renda's costs, and she failed to consider that maintenance costs may consist only of labor. These three objections to the data Robertson considered go to the bases and sources of her opinions. They do not justify excluding Robertson's expert opinion testimony. *See Cedar Lodge Plantation*, 2018 WL 4932716, at *3 (error to exclude expert report that plotted data points, but omitted some that were inconsistent with the desired trend).

Oscar Renda also argues that Roberton's stated assumptions underlying her analysis and conclusions are unsupported. In particular, Robertson assumed that 1) all pipes and inlets were connected to the downstream stormwater system and discharged to outfalls; 2) there were no stormwater controls installed downstream of the photographed locations; 3) specific locations were left undisturbed or unattended for fourteen or more days; and 4) all areas were required to have erosion and sediment storm controls.

"When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court." *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 144 (4th Cir. 1994).

> Of course, when facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible. When an expert's testimony is not based upon the facts in the record but on altered facts and speculation designed to bolster a party's position, the trial court should exclude it.

*Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal marks and citations omitted). It appears that all of the assumptions Oscar Renda challenges here are based on the Network's version of facts that are in dispute, making this objection go to the weight and credibility of Robertson's testimony rather than its admissibility.

Oscar Renda also contends that the Network will be soliciting "similar testimony" about the violations from lay witnesses, which indicates that Robertson's expert opinion testimony is not helpful or necessary. (Oscar Renda Mem. 8, ECF No. 106.) Oscar Renda argues that the Court should either allow only Robertson's expert opinion testimony or lay opinion testimony on the issues in Robertson's report, but not both.

There is no conflict presented by introduction of both lay and expert witness testimony on the same issue. Unlike expert witnesses, lay witnesses may not offer opinion testimony "based on scientific, technical, or other specialized knowledge

-11-

within the scope of Rule 702." Fed. R. Evid. 701(c); *see United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) ("[L]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field . . . ."). The Rules contemplate expert and lay witness opinion testimony as complementary, rather than mutually exclusive, sources of evidence. Furthermore, Oscar Renda has provided no information regarding the specific lay witnesses it anticipates the Network will call, the expected opinion testimony (other than that it will be "similar" or "on the same issues"), and how this renders Robertson's expert opinions unnecessary or unhelpful. Whether expert testimony will help the jury determine a fact in issue "goes primarily to relevance." *Daubert*, 509 U.S. at 591. Robertson's opinions are clearly relevant as they primarily pertain to the main issue in dispute: whether Oscar Renda violated the Storm Water Pollution Prevention Plans. The Court therefore finds no basis for holding that Robertson's expert opinions will be unhelpful to the jury simply because laypeople will offer "similar" testimony.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [99] Motion to Limit Testimony of James Connors filed by Plaintiff Gulf Restoration Network is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [103] Motion to Exclude Additional Testimony of Kevin Dillon filed by Defendant Oscar Renda Contracting, Inc. is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [105] Motion in

Limine to Exclude or Limit Testimony of Renee Robertson filed by Defendant Oscar Renda Contracting, Inc. is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 13th day of December, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE