IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**GULF RESTORATION NETWORK**                                         **PLAINTIFF**

**v.**                                          **CAUSE NO. 1:17CV130-LG-RHW**

**OSCAR RENDA CONTRACTING, INC.**                              **DEFENDANT**

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are the [101] Motion for Summary Judgment filed by the plaintiff Gulf Restoration Network; the [107] Motion for Partial Summary Judgment filed by the defendant Oscar Renda Contracting, Inc.; and the [115] Motion to Strike filed by the Network. The Motions have been fully briefed. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that the Motions should be denied.

## I. BACKGROUND

Oscar Renda is engaged in a large infrastructure project called the East Biloxi Street Repair Program, which involves replacing water, sewer, drainage and street infrastructure systems damaged by Hurricane Katrina. The Program has involved the disturbance of a large area of land adjacent to the Back Bay of Biloxi. Oscar Renda was required to, and did obtain Large Construction General Permits from the Mississippi Department of Environmental Quality ("MDEQ") to conduct its work. The current Permit allows Oscar Renda to "discharge storm water from regulated construction activities into state waters in accordance with effluent limitations, inspection requirements and other conditions set forth in [sic] herein."

(Network Mot. Summ. J. Ex. 5, at 53, ECF No. 101-5) (ECF pagination).  The Permit required Oscar Renda to develop a site-specific Storm Water Pollution Prevention Plan (SWPPP) that "describe[s] and ensure[s] the implementation of specific best management practices for the project site, which will reduce pollutants in storm water discharges and assure compliance with the terms and conditions" of the Permit.  (*Id*. at 70.)

The entire Project is separated into eight project areas, each of which was designed by a separate civil engineering firm.  The engineering firms also designed a SWPPP for their respective project areas, resulting in eight SWPPP's for the entire Project.  (*See id*. Ex. 6, at 123, ECF No. 101-6) (ECF pagination).

The Amended Complaint includes ten claims for relief, one of which was dismissed by the Court's Order granting partial summary judgment.  The remaining claims allege Oscar Renda's failure to comply with the terms of the Large Construction General Permit and the SWPPPs.  The Network alleges that Oscar Renda has failed to 1) either sequence its construction activities so that the disturbed area is minimized, or justify why sequencing is infeasible; 2) develop best management practices that reflect the specific conditions of the construction site; 3) implement necessary structural controls; 4) have adequate procedures in place for the removal of accumulated sediment and to timely mitigate and prevent migration of soil and debris from work sites; 5) maintain the storm water control devices in good working order; 6) fully implement the SWPPPs or amend them where proven ineffective; 7) ensure that storm water discharge is free from eroded soils and

suspended solids; 8) meet its duties to comply with all terms of the Permit and to mitigate discharge that is in violation of the Permit; and 9) notify the MDEQ of anticipated or unanticipated noncompliance as a result of significant rain events. (Am. Compl. 18-20, ECF No. 14.)

## II.  DISCUSSION

### A.  The Network's Summary Judgment Motion

The Network filed a Motion for Summary Judgment arguing that it is entitled to judgment as a matter of law in regard to Oscar Renda's liability for violating the Clean Water Act.  The Network asserts that Oscar Renda's violation of the Clean Water Act has been established through 1) the declaration of nearby resident Elizabeth Englebretson that she observed runoff from the Project area into storm drain inlets and certain bayous "on dozens of occasions;" and 2) an Oscar Renda employee admitted to observing runoff with any significant rainfall.  (Pl. Mem. 17, ECF No. 102.)  The Network attaches a large number of photographs and videos showing conditions during a rainfall event or the effects of runoff, and points to Oscar Renda's admission that it never informed the MDEQ of an incidence of non-compliance with the Permit.  The Network asserts that the photographs, videos, and Englebretson's testimony make it "indisputable that Oscar Renda violated the terms of the Storm Water Permit at the sites and in the ways stated in Exhibit 1, and failed to report that non-compliance."  (*Id*. at 19.)

The Court has examined Exhibit 1.  It is a spreadsheet matching images of an area, the construction drawings, and Englebretson's commentary on her observations of the area.  Presumably the Court is to compare what the area should

look like according to the construction drawings to what it actually looks like according to Englebretson's testimony and the images, and arrive at the conclusion that a Permit violation occurred. In the Court's view, the evidence presented by the Network is necessary but not sufficient to prove its claims.[1]

To illustrate the point, the Court notes that Engelbretson refers to a number of instances of the lack of, or the poor condition of, a silt/sediment fence. Although this may be a Permit violation, at least one of the SWPPP's states that silt fences would be

> installed downslope of disturbed areas or in minor swales or ditch lines that have been constructed for the sole purpose of facilitating stormwater drainage. Silt fencing and sediment barriers will not be installed in live streams or in areas where surface flow is anticipated to exceed one (1) cubic foot per second.

(Network Mot. Summ J. Ex. 6, at 9, ECF No. 101-6) (ECF pagination). Thus, whether silt fencing was necessary at a particular location is a fact that the Network must establish in addition to the fact of whether it was present or adequate. Accordingly, the Court finds that the Network has not satisfied its initial burden of proof as a summary judgment movant. The Motion will be denied.

B. Oscar Renda's Motion to Strike

Oscar Renda moved to strike the affidavits of Elizabeth Englebretson and Robert Smith submitted by the Network in support of its summary judgment

---

[1] In its rebuttal, the Network went beyond its initial general argument for summary judgment by incorporating specific arguments and additional evidence in support of its Motion. As Oscar Renda did not have an opportunity to respond, the Court will not consider it at this stage. *See AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011).

motion. Englebretson and Smith are two identified members of the Network organization. Oscar Renda contends that the affidavits should be striken because they are not based on first-hand knowledge, refer to impermissible hearsay, and include impermissible expert opinions. This motion will be denied as moot. It was not necessary to rely on either affidavit to determine if there was a question of material fact.

    C. Oscar Renda's Summary Judgment Motion

Oscar Renda requests summary judgment only on the alleged violations for which the Network cannot show prima facie evidence of each essential element of a violation of the Clean Water Act. Oscar Renda "asks the Court to review the actual evidence that [the Network] will offer to support each of the thousands of alleged violations, and dismiss those for which GRN lacks evidence of the essential elements of a Clean Water Act violation." (Oscar Renda Mem. in Support of Mot. Summ. J. 3, ECF No. 108.) In particular, Oscar Renda's Motion "focuses on the absence of evidence that a pollutant from a point source was actually discharged to waters of the United States." (*Id*. at 5.) Oscar Renda argues that it was engaged to replace Biloxi's stormwater system that did not drain properly because it had become clogged with sand and debris after Hurricane Katrina. Oscar Renda argues that "with limited exceptions, [the Network] does not have evidence to support its contention that stormwater entering any drain inlet necessarily made its way to an outfall and eventually discharged to waters of the United States." (*Id*. at 6.)

Initially, the Court notes the nature of this case, which is a citizen suit to

enforce the effluent limitations imposed by a permit. *See* 33 U.S.C. § 1365(a)(1)(A) (permitting a citizen suit against persons "alleged to be in violation of an effluent standard or limitation"). The Network seeks to show that Oscar Renda has violated certain terms of the Permit and underlying SWPPPs, not that Oscar Renda has discharged effluent into the waters of the United States. Oscar Renda does have permission to discharge to waters of the United States as long as it occurs under specified conditions and limitations. The question here is compliance with the conditions and limitations, not whether discharge occurred. As the Ninth Circuit Court of Appeals explained,

> several courts have held that citizens groups may seek to enforce many kinds of permit conditions besides effluent limitations. In fact, permit conditions that courts commonly enforce under § 505(a) are not effluent limitations, but rather, requirements for retaining records of discharge sampling and for filing reports. *See, e.g., Sierra Club v. Simkins Industries, Inc.*, 847 F.2d 1109, 1115 (4th Cir. 1988) ("Simkins' reporting requirements are expressly made conditions of its permit, and therefore violations of these conditions, by operation of § 1365(f)(6) [CWA § 505(f)(6) ], are violations of an effluent standard or limitation of § 1365(a)."), cert. denied, 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989). Other examples of enforceable permit conditions include conditions relating to sewage maintenance, *Pymatuning Water Shed Citizens for a Hygienic Env't v. Eaton*, 506 F. Supp. 902 (W.D. Pa. 1980), aff'd, 644 F.2d 995 (3rd Cir. 1981), and construction schedules, *Locust Lane v. Swatara Township Auth.*, 636 F. Supp. 534, 539 (M.D. Pa. 1986) (rejecting defendant's attempt "to impose a limitation on § 1365 where one is neither supported by the language nor the legislative history"). Finally, citizens groups may enforce even valid permit conditions that regulate discharges outside the scope of the Clean Water Act, namely **discharges that may never reach navigable waters**. *Connecticut Fund For Env't v. Raymark Indus., Inc.*, 631 F. Supp. 1283, 1285 (D. Conn. 1986).

*Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979, 988-89 (9th Cir. 1995) (emphasis added).

Therefore, whether the stormwater eventually drained into the waters of the United States is not dispositive of the claims in this case.

Even if discharge into waters of the United States was necessary for the Network to obtain judgment in its favor, Oscar Renda has not identified which of the individual violations cannot be supported with evidence of the essential elements of a Clean Water Act violation. Instead, Oscar Renda has left it to the Court to review each picture and determine whether it depicts a violation. Nor has Oscar Renda identified what the "limited exceptions" to the lack of evidence regarding discharge might be.

This does not satisfy Oscar Renda's initial burden of proof as a summary judgment movant. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Simply viewing pictures of various drain pipes and waterways cannot inform the Court of whether there has been a violation of the Permit or SWPPP terms. This is a classic question of fact unsuited to resolution on summary judgment. For these reasons, Oscar Renda's Motion will be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [101] Motion for Summary Judgment filed by the plaintiff Gulf Restoration Network is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [107] Motion for

Partial Summary Judgment filed by the defendant Oscar Renda Contracting, Inc. is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [115] Motion to Strike filed by Gulf Restoration Network is **DENIED** as moot.

**SO ORDERED AND ADJUDGED** this the 13th day of December, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE